IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARC NORFLEET, #R57214, <br><br>   Plaintiff, <br><br> v. <br><br> IDOC, *et al.*, <br><br>   Defendants. | Case No. 20-cv-00515-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

On April 9, 2019, the Seventh Circuit issued an order restricting Marc Norfleet, an inmate in the custody of the Illinois Department of Corrections, from filing any papers in courts in this Circuit until he has fully paid all outstanding fees and sanctions imposed against him in any civil actions. *See Norfleet v. Baldwin,* No. 19-1337, Doc. 9 (7th Cir. April 9, 2019). Because of this restriction, the Clerk of this Court returns unfiled any documents submitted by Norfleet. Recently, on May 24, 2021, the Seventh Circuit modified the filing restriction by adding the following language:

> This order does not apply to any suit that Norfleet filed while in imminent danger of serious physical injury, and that request judicial aid in bringing that danger to an end. Whether such a danger exists is a question for the district judge, and Norfleet's claim of danger will not be automatically accepted. But if such a claim is made, clerks of court will accept Norfleet's papers until the district judge rules on the claim.

*Id.* at Docs. 13 and 14. Three days later, on May 27, 2021, Norfleet submitted a complaint alleging imminent danger. In accordance with the Seventh Circuit's new directive, the Clerk of Court opened this case and filed the Complaint. As the Court is not required to automatically accept Norfleet's allegations of danger as true, the Court directed the Warden of Menard Correctional Center, Anthony Wills, to respond to Norfleet's claims of imminent danger and held a hearing on

July 23, 2021. *See Taylor v. Watkins,* 623 F. 3d 483, 486 (7th Cir. 2010) (a hearing is appropriate for resolving disputed claims of imminent danger). Based on the testimony and documents presented, the Court finds that Norfleet is not in imminent danger and may not proceed with this case.

### BACKGROUND

Norfleet filed the Complaint alleging imminent danger while housed at Menard Correctional Center ("Menard"). In the Complaint and supplemental documents, Norfleet, who is confined to a wheelchair, alleges he is in imminent danger because he cannot properly care for his skin disease, staphylococcal folliculitis. (Docs 1, 7). To treat his skin condition, Norfleet has been prescribed an oral medication, Doxycycline, and a body scrub, Dyna-hex 4. He no longer takes the Doxycycline because after taking the medicine for a few months he has developed blurred vision and eye pain. He claims these symptoms are side effects of the prescription. Norfleet is also unable to properly use the body scrub due to the shower conditions at Menard. He states that he has received medical attention but that he is not receiving proper accommodations when he showers.

When showering at Menard, Norfleet uses a stationary shower chair, rather than a shower chair with locking wheels. Additionally, Menard has an antique boiler system that causes the temperature of the water when showering to fluctuate from warm, to scalding, to freezing temperatures within minutes. The combination of these two conditions forces Norfleet to sit stationary and freeze or burn as he showers, and he is unable to properly bath and wash with prescription body scrub. Norfleet claims he also cannot wash himself in his cell because his sink does not produce hot water. As a result, his skin condition has worsened and spread. Norfleet states he has painful carbuncles that bleed, scab, and are causing hair loss and scarring. Without proper access to a shower and warm water, Norfleet argues his painful skin condition will become progressively worse.

In the Complaint, Norfleet asks the Court to order Defendants to provide him with a shower chair with locking wheels or create an ADA disability accommodating shower stall with handled spigot and temperature controls. (Doc. 1, p. 24). He also seeks monetary damages for being denied shower benefits for over two years and for the pain caused by his skin condition. On July 1, 2021, Norfleet also filed a motion for injunctive relief asking the Court to order Defendants to provide hot water in his cell and a shower chair with locking wheels. (Doc. 21).

Defendant Wills argues that Norfleet is not entitled to a finding that he is in "imminent danger of physical harm." (Doc. 20). First, Norfleet's claims regarding his shower conditions occurred and were addressed prior to the filing of the Complaint and "allegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed." (*Id.* at p. 4) (citing *Ciarpaglini v. Saini,* 352 F. 3d 328, 330 (7th Cir. 2003)). On March 16, 2021, the temperature in the shower in North 2 A wing was reported as being too hot and a work order was completed that same day. Similarly, on March 26, 2021, a work order was completed regarding the availability of warm water in Norfleet's cell. Furthermore, Norfleet has been complaining about the various shower chairs since 2018. He has access to an ADA accessible shower and shower chair. Norfleet met with the Assistant ADA Coordinator, Joleen Kuhnert, on June 10, 2021, and he did not complain about the shower conditions or the availability of warm water in his cell.

Second, Wills argues that Norfleet's claims do not rise to the level of placing him in imminent danger of physical harm, as there is no "real and proximate" threat to his safety. As mentioned, Wills states that the issues with the water temperature were immediately addressed, and Norfleet has access to an ADA shower and shower chair. There is also an ADA attendant available to assist Norfleet when using the shower. Furthermore, Norfleet has been receiving regular medical care and treatment for his various skin conditions. Most recently, on January 12, 2021, Norfleet was seen by a nurse and referred to the "doctor call line" to renew Norfleet's

medication and for treatment of "multiple pimples, small sores to his back and elbows." (Doc. 20, p. 4). On January 28, 2021, Norfleet saw a nurse practitioner who prescribed two medications to treat what is described in the medical record as "small acne like bump." On March 16, 2021, Norfleet was seen by medical staff who noted that he had acne "scattered on cheeks." The medical records indicate that he had stopped taking one of the medications prescribed to assist him with this skin condition. At an appointment with the nurse practitioner on April 14, 2021, it was noted that the acne on his face appeared "improved." A week later, Norfleet went to nurse sick call for what he called a bed sore, and the nurse described the sore as an ingrown hair follicle and did not observe swelling or redness. Based on the record, Wills contends that there is no evidence that the shower conditions or his various skin ailments place him in imminent danger of physical harm.

Finally, in a supplemental response, Defendant Wills informs the Court that Norfleet was transferred from Menard to Pinckneyville Correctional Center ("Pinckneyville") on July 8, 2021. (Doc. 25). Because Norfleet is no longer housed at Menard, Wills argues the claims of imminent danger from the conditions at Menard and requests for any injunctive relief are now moot. In light of the Seventh Circuit's order, which permits Norfleet to only file lawsuits "while in imminent danger of serious physical harm," he asks the Court to dismiss the case.

Norfleet filed a motion to supplement his Complaint claiming that despite his transfer, he is still in imminent danger. (Doc. 26). Because Norfleet was attempting to amend the Complaint in a piecemeal fashion by adding new claims and Defendants, his motion to supplement was denied. (Doc. 28). The Court stated that it would allow the parties to provide arguments at the hearing regarding the effect of the transfer to Norfleet's claim of imminent danger, as well as his request for preliminary injunctive relief.

## ANALYSIS

The Court is unaware of any case law addressing the imminent danger exception as used

in the Seventh Circuit's filing ban. The Seventh Circuit, however, has addressed the meaning of "imminent danger of serious physical harm" as this phrase is used in 28 U.S.C. § 1915(g). *See Ciarpaglini v. Saini,* 352 F. 3d 328 (7th Cir. 2003); *Taylor v. Watkins,* 623 F. 3d 483 (7th Cir. 2010); *Sander v. Melvin,* 873 F. 3d 957 (7th Cir. 2017) (collecting cases). Section 1915(g) prohibits a prisoner who has brought three or more actions that have been dismissed because they were frivolous, malicious, or failed to state claim from proceeding *in forma pauperis*, unless the prisoner faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The Court finds no reason why "imminent danger of serious physical injury," as stated in the Seventh Circuit's order restricting Norfleet's court filings would have a different meaning or application than the same phrase used in Section 1915(g). Thus, the Court will look to case law discussing the imminent danger exception as set forth in Section 1915(g) in assessing whether Norfleet has sufficiently pled imminent danger here.[1]

The Seventh Circuit has held that for the purpose of Section 1915(g), "imminent danger" requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini*, 352 F.3d at 330 (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). Courts generally do not accept claims of imminent danger that are "conclusory or ridiculous." *Id.* at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed." *Id.* at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

First, the Court does not find the issue of imminent danger moot because Norfleet has been

---

[1] Norfleet has also incurred three strikes pursuant to Section 1915(g) and has filed a motion to proceed *in forma pauperis* ("IFP"). (Doc. 2). *See Norfleet v. Baldwin,* No. 18-cv-01758 (S.D. Ill. Mar. 7, 2019, Doc. 30) (discussing Norfleet's case history). Even if the "imminent danger" exception as used in the Seventh Circuit's order requires a different analysis, the Court would eventually have reviewed Norfleet's claims of imminent danger under Section 1915(g) in order to assess if he could proceed IFP in this case.

transferred from Menard to Pinckneyville. The Seventh Circuit's amendment to the filing restriction specifically states that the restriction does not apply to any suit "*filed* while in imminent danger." *Norfleet v. Baldwin,* at Docs. 13 and 14 (emphasis added). This means that the imminent danger analysis requires the Court to consider whether Norfleet was in imminent danger at the time of filing. This reading of the restriction is consistent with the Seventh Circuit's treatment of "imminent danger" as used in Section 1915(g), as well as rulings by other district courts in this Circuit. *See Ciarpaglini,* 352 F. 3d at 330 (7th Cir. 2003) ("[t]he question is whether these allegations are sufficient to find that Ciarpaglini, when he filed his complaint, satisfied the "imminent danger of serious physical injury" requirement"); *Duncan v. Spiller,* No. 15-cv-087-MKR-SCW, 2015 WL 13740745, at *6 (S.D. Ill. Oct. 28, 2015) ("the standard for proceeding IFP is whether the inmate was in imminent danger at the time he filed the Complaint"); *Naseer v. McArdle,* No. 17-cv-509-jdp, 2020 WL 1638844, at *4 (W.D. Wisc. Apr. 2, 2020) ("The imminent danger requirement applies to a plaintiff's status at the time he filed his complaint. So a change in those conditions after filing of the complaint does not affect the imminent danger analysis."); *Brown v. Watson,* No. 20-cv-00576-JRS-MJD, 2021 WL 1890128, at *4 (S.D. Ind. May 11, 2021) (holding that once the court grants an IFP motion based on a claim of imminent danger, the court will not revisit the motion based on arguments that imminent danger is no longer present). Thus, the Court must still make a determination regarding Norfleet's imminent danger claim even though he has transferred to a different facility after filing the Complaint.

### I. Menard Correctional Center

That being said, Norfleet has not demonstrated that he was in imminent danger when he filed the Complaint. While sympathetic to Norfleet's discomfort caused by his skin condition, the testimony in combination with the medical records do not show that he faced serious physical injury due to the lack of adequate shower conditions at Menard. While he testified that his skin

condition is so severe it causes painful carbuncles that bleed and wake him up at night, the Court does not find this testimony credible or supported by the record.

At the hearing, Norfleet seemed more concerned with receiving a shower chair with wheels, than securing proper medical treatment for his skin ailment. In his Complaint, he states that he has received medical treatment, including medications. (Doc. 1, p. 12). But he is disgruntled because Defendants encourage him to take the medicine over accommodating his disability by providing him a shower chair with wheels. (*Id.*). He testified that he voluntarily stopped taking the Doxycycline while at Menard because he believed it was affecting his vision. (*See also* Doc. 1, p. 12). Because he stopped taking it, medical staff canceled the prescription. Norfleet stated that he was going to ask the doctor at Pinckneyville to prescribe him the Doxycycline again, however, because he has now been given drops for his eyes. Despite these alleged side effects, and the inability to take his oral prescription, he has not sought relief requesting a new prescription or different course of treatment. Rather, Norfleet requests a specific kind of shower chair. An issue he has been grieving since October 2018 and that has previously been addressed by this Court. (Doc. 1, p. 6, 10); *see also Norfleet v. Baldwin*, No. 18-cv-1524-SMY-RJD, Doc. 98 (S.D. Ill., May 24, 2019).

In *Norfleet v. Baldwin,* in ruling on a motion for preliminary injunction, the Court found that in providing a stationary shower chair for safety reasons, Menard staff had made available to Norfleet a "functional ADA shower chair." *Norfleet v. Baldwin,* at Doc. 98, p. 6, *report and recommendation adopted by* Doc. 106. Similarly, in this case, Joleen Kuhnert, the current ADA Coordinator at Menard, states that the newest ADA shower chairs that were available to Norfleet at Menard "initially had wheels, but they have since been removed as they posed a fall risk to the individuals using the shower chairs." (Doc. 20-1, p. 1). Since starting her position at Menard in March 2021, she has not received any letter or correspondence from Norfleet. Furthermore,

Norfleet testified that he did not complain of issues regarding his inability to shower during a conversation they had on June 10, 2021. Norfleet spoke again to Kuhnert in July 2021 before being transferred, but it is unclear if he spoke to her during this meeting about his shower conditions. He testified that he talked to her about his shower chair at some point before leaving Menard. However, even if this conversation occurred, Norfleet waited weeks after filing the Complaint to notify Kuhnert he was having problems, which implies that the physical danger posed by the shower conditions was not "real and proximate," as he claims.

Most notably, Norfleet testified that he objected to his transfer to Pinckneyville and that he wants to return to Menard, where the alleged imminent danger commenced. He stated that the showers at Menard continue to produce water at varying temperatures but that whenever he reported shower temperature issues to maintenance, Menard staff never ignored him and always tried to fix the problem. Records submitted by Defendant shows that the water temperature in the showers used by Norfleet was reported as being too hot on March 16, 2021. A work order was submitted and completed that same day to resolve the issue. (Doc. 20-5, p. 2). Norfleet testified that he can shower at Menard, and to resolve his issues, all he needs is to be returned to Menard and provided locking wheels for his shower chair.

Based on this testimony, the Court does not find that the shower conditions at Menard presented a real and proximate threat of serious physical injury to Norfleet. He was receiving proper medical treatment for his skin condition, he had an ADA accessible shower chair available to him, as well as a shower attendant to assist him. If the shower was not working properly, he could request to have a work order submitted, and according to his testimony, his maintenance issues were addressed when presented to staff. While the Court does not doubt that showering is difficult for him, there is no evidence that he was in physical danger at the time of filing.

*II. Pinckneyville Correctional Center*

Additionally, the Court does not find that he is currently in imminent danger because of the current shower conditions at Pinckneyville. Norfleet argues that at Pinckneyville he continues to not have meaningful access to a shower so that he can effectively use the prescribed body scrub, and therefore is still in imminent danger. Again, his testimony regarding the conditions of the showers at Pinckneyville is not credible.

At the hearing, Norfleet testified that, like at Menard, the shower room at Pinckneyville has a stationary chair and the water suddenly changes from normal to scalding temperatures within seconds. Since arriving at Pinckneyville, his skin condition has worsened. (*See also* Doc. 34, p. 2). According to Christine Brown, the Health Care Unit Administrator and ADA Coordinator at Pinckneyville, Norfleet has access to a shower chair and shower facilities that are ADA accessible. (Doc. 33-1, p. 2). If a medical doctor or nurse practitioner determines that Norfleet needs additional accommodations to shower based on his medical needs, he may be permitted to take a shower in the ADA shower in the health care unit. She states that Norfleet has not complained of issues with his shower chair through written correspondence to her. Likewise, Brian O'Daniel, the Chief Engineer at Pinckneyville, attests that he has not received any complaints about the water temperature in 3 cellhouse, where Norfleet is currently housed. (Doc. 40-2, p. 2).

Norfleet argues that Pinckneyville staff choose which request slips and grievances they document and process. (Doc. 35, p. 10). He also claims he has submitted request slips and "kites" to Christine Brown, but she has not responded. (Doc. 35, p. 13). But he does not directly claim that he has filed grievances or the proper requests at the institutional level in order to have his shower concerns addressed or skin disease treated. Additionally, the generalized claim that his grievances regarding shower issues are ignored is not supported by the record.

In his motion to supplement his Complaint, Norfleet alleges that he did not receive a

response from his emergency grievance asking staff to reduce the scalding hot shower temperature and replace the stationary shower. (Doc. 26, p. 1). Norfleet provides a copy of a counseling summary recording the receipt of his grievance dated July 12, 2021 by the grievance office on July 16, 2021. (*Id.* at p. 7). In his declaration, Chief Engineer O'Daniel states that around July 21, 2021, a grievance officer notified him that Norfleet had written a grievance complaining of the temperature of the water in the showers of 6 cellhouse. (Doc. 40-2, p. 1). The cellhouse water temperatures and the boiler's water temperature are monitored by a computer on a regular basis. O'Daniel checked the computer, and the computer showed that the water temperature was at an appropriate level. However, due to the complaint, the water temperature for 6 cellhouse was lowered on July 23, 2021. (*Id.*). Norfleet was transferred from 6 cellhouse to 3 cellhouse on July 21, 2021, prior to the temperature adjustment. (Doc. 40-1, p. 2). Although Norfleet's grievance was ultimately responded to too late, he filed a grievance and, in a little over a week, staff addressed his request. Other than the conclusory allegations, Norfleet does not point to any other specific correspondences or grievances he has submitted that have gone unanswered or attempts he has made to speak to staff specifically regarding his shower conditions.[2]

Additionally, there is no evidence that Norfleet has sought further treatment for his skin condition. Norfleet testified he was seen by a nurse on July 22, 2021, and the nurse referred him to be seen by a doctor for reports of chronic back pain. (Doc. 40, p. 1). He ultimately was not seen by the doctor for disputed reasons,[3] but he was seen again by a licensed practical nurse on July

---

[2] Norfleet alleges that he spoke to Christine Brown on August 5, 2021, but does not claim he asked her about his inability to shower or skin treatment. (Doc. 35, p. 13). He also asserts he submitted three emergency grievances regarding the denial of pain medication at Pinckneyville and a grievance regarding his medical appointment with Dr. Meyers on July 23, 2021, in which Dr. Meyers refused to see him because he could not wheel himself into the medical office from the hall and Dr. Meyers would not provide assistance. (Doc. 26, p. 3; Doc. 35, p. 13). These claims are not before the Court.

[3] Norfleet had an appointment with Dr. Meyers on July 23, 2021 for complaints of pain. Dr. Meyers recorded that Norfleet refused to wheel himself into the exam room from the hallway, and therefore was not seen. (Doc. 40, p. 1-3). Dr. Meyers noted that Norfleet does not have any visible muscle atrophy, and his last physical from 2019 does not record any upper extremity weakness. Norfleet claims he refused to push himself into the exam room because of his chronic pain. (Doc. 35, p. 14).

26, 2021. (*Id.* at p. 4). The medical record indicates that at the appointment he requested a refill of Motrin and Tramadol. There is no notation, and Norfleet does not allege, that he alerted medical staff at his appointments in July that he was unable to properly treat his skin condition due to inadequate showers.

The imminent danger exception is available for "genuine emergencies," where "time is pressing." *Lewis*, 279 F. 3d at 531. The Court cannot find imminent danger due to an inability to shower and care for his skin condition where Norfleet did not first seek the assistance of Pinckneyville staff in resolving his issues through proper procedures at the facility. There is no evidence that he wrote a grievance regarding his current shower conditions in 3 cellhouse, alerted correctional officers verbally, submitted sick call slips, or presented his issues to medical staff at his medical appointments. Thus, he has not demonstrated imminent danger.

Finally, the Court notes that throughout this litigation Norfleet has consistently changed or added to his allegations, making his claims of imminent danger a moving target. During the hearing, Norfleet spent significant time arguing other problems he is currently experiencing at Pinckneyville, including that he is being denied ADA programs and services, he has been at the facility for fourteen days and had not been evaluated by a doctor, he has been denied pain medication, and his legal documents have been confiscated. In subsequent filings, he continued to add allegations regarding retaliation and denial of disability accommodation such as a gel mattress and an attendant to push him from the hall into the exam room for his medical appointment on July 23, 2021. (Doc. 34, p. 3; Doc. 41, p. 1).

In conflict with his testimony presented at the hearing, Norfleet subsequently filed a supplemental response to Defendant's motion to supplement (Doc. 35, p. 11), two additional motions (Doc. 36, p. 2, Doc. 37, p. 4), and one notice to the Court (Doc. 38, p. 2) claiming that he has not had access to a shower since his arrival at Pinckneyville because the shower spigot is

broken and does not produce water at all. In the supplemental response, he claims that the spigot in specifically in 3 cellhouse, where he was housed at the time of hearing, is broken and does not produce water. (Doc. 35, p. 11). Norfleet asserts that the shower has been broken since he was transferred to 3 cellhouse on July 21, 2021. (*Id.*). However, in a subsequent motion he states that he has been "denied all RA/ADA shower access since July 8, 2021 no water exits spigot and no shower wand given probably due to no water." (Doc. 37, p. 4). He claims that the guards have submitted a work order to maintenance to have the shower fixed, but the shower remains broken. (Doc. 35, p. 11). Prior to and at the hearing, Norfleet only addressed issues regarding the stationary shower chair and inconsistent water temperature at Pinckneyville. (*See also* Doc. 26). At no point did he claim that the shower in 3 cellhouse was broken and did not actually function. Norfleet's multiple attempts to modify claims and the inconsistency in his allegations contributes to the finding that his claim of imminent danger at Pinckneyville is not credible.

## DISPOSITION

For these reasons, and in accordance with the Seventh Circuit's filing restriction, the Court finds that Norfleet is not in imminent danger of serious physical injury currently or when he filed the suit due to the shower conditions at Menard and Pinckneyville. Therefore, the filing restriction applies, and the Clerk of Court **SHALL** return unfiled all papers submitted by Norfleet in this case. The Clerk of Court is **DIRECTED** to administratively close this case, and all pending motions are **DENIED as moot.**

    **IT IS SO ORDERED.**

    DATED: September 2, 2021

    s/Stephen P. McGlynn
**STEPHEN P. MCGLYNN
United States District Judge**